1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ROSEMARY GARITY,                          )
                                          )
                    Plaintiff,            )          2:11-CV-01109-PMP-CWH
                                          )
v.                                        )          ORDER
                                          )
APWU NATIONAL AFL-CIO and APWU )
LOCAL #7156,                              )
                                          )
                    Defendants.           )
_____)

13          Presently before the Court is Defendant APWU Local #7156's Motion to Dismiss

14   Amended Complaint (Doc. #57) and Defendant APWU National AFL-CIO's Motion to

15   Dismiss Amended Complaint (Doc. #60), both filed on December 6, 2011.  Plaintiff

16   Rosemary Garity filed an Opposition (Doc. #69) on December 19, 2011.  Defendants filed a

17   Joint Reply (Doc. #70) on January 6, 2012.

18   **I. BACKGROUND**

19          The following factual recitation is derived from Plaintiff Rosemary Garity's

20   Amended Complaint.  For purposes of Defendants' motions to dismiss, the Court accepts

21   Plaintiff's factual allegations as true.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

22   (2007).

23          **A. Plaintiff's Employment and Impairments**

24          Plaintiff Rosemary Garity is employed by the American Postal Worker's Union

25   ("the National APWU") as vice-president of the southern district of Nevada.  (Am. Compl.

26   (Doc #54) at 4:18.)  Plaintiff was also employed by APWU Local #7156 ("the Local

APWU") as a shop steward between January 2008 and January 12, 2011.  (<u>Id.</u> at 4:19-20.)
Plaintiff was a member of the Local APWU at all times relevant to this action.  (<u>Id.</u> at
4:20.)  Plaintiff suffers from mental and physical impairments including:  heel spurs, chest
pains, chronic fatigue, sleep disturbance, myalgia, muscle spasms, osteoporosis, major
depressive disorder, anxiety disorder, panic attacks, and cancer.  (<u>Id.</u> at 4:26-5:1.)

In September 2010, Debra Blankenship ("Blankenship") became the new
Postmaster.  (<u>Id.</u> at 22:26-23:2.)  After Blankenship's arrival, Plaintiff began to observe
favoritism and disparate treatment in the office and decided to address it through the
grievance system.  (<u>Id.</u> at 23:1-2.)  On November 10, 2010,  Kathi Poulos ("Poulos"), the
newly-elected president of the Local APWU, arrived after being voted in by a group whom
Plaintiff labels the "favorite employees."  (<u>Id.</u> at 23:6-8.)  On December 29, 2010, Poulos
entered into an agreement with the United States Post Office management in Pahrump,
Nevada ("Management") to cut Plaintiff's hours.  (<u>Id.</u> at 23:11-13.)  From December 2010
through January 2011, Poulos secretly met with others to discuss removing Plaintiff from
her position as shop steward because Plaintiff had begun to file grievances to address the
favoritism and disparate treatment.  (<u>Id.</u> at 23:14-24.)

On January 11, 2011, Plaintiff missed a grievance meeting in Las Vegas "due to
[her] legs and feet locking up severely."  (<u>Id.</u> at 6:8-10.)  That same day, Poulos informed
Management that Poulos planned to remove Plaintiff from her position as shop steward for
the Local APWU.  (<u>Id.</u> at 24:15-17.)  Management sent Plaintiff home early.  (<u>Id.</u> at 24:16.)
The next day, Poulos told Plaintiff "after that stunt you pulled yesterday" she was removing
Plaintiff as shop steward for the Local APWU and appointing herself to fill the position.
(<u>Id.</u> at 6:10-12, 24:19-20.)

**B.  Plaintiff's Grievances**

Plaintiff asked APWU officials to file dozens of grievances on her behalf.
Poulos and other officials refused to investigate and file many of these grievances.  (<u>Id.</u> at

14:22-19:12.)  Of the grievances filed, Poulos assured Plaintiff that all the grievances were valid, but Poulos later withdrew over forty of these grievances.  (Id. at 20:2-22:20.)  In one instance, on January 22, 2011, Poulos told Plaintiff that another employee wanted Poulos to withdraw Plaintiff's grievances regarding discrimination and retaliation, which Poulos did. (Id. at 26:3-19.)  Poulos was openly hostile towards Plaintiff every time she requested that Poulos file a grievance on Plaintiff's behalf, and Poulos told Plaintiff that she was the only one having problems.  (Id. at 11:6-8.)  Poulos also refused to address Management's "continual and constant mental abuse/harassment" of Plaintiff.  (Id. at 11:1-2.)  On February 1, 2011, Plaintiff approached the alternate shop steward, Al Weyen ("Weyen"), to file multiple grievances but he refused to investigate and the time limits on the grievances lapsed.  (Id. at 27:19-23.)  Furthermore, the National APWU business agents James Scoggins ("Scoggins") and Gilbert Ybarra ("Ybarra") withdrew grievances, settled grievances in favor of Management, and advised Poulos to withdraw and not file grievances on Plaintiff's behalf.  (Id. at 5:8-11, 10:9-11.)

Many of Plaintiff's grievances related to adverse scheduling.  Plaintiff repeatedly filed grievances relating to the cutting of her hours and the "criminal delay" of mail.  (See, e.g., id. at 15:8-20.)  Poulos and Management scheduled Plaintiff to work irregular hours. (See, e.g., id. at 28:2-3.)  During a discussion between Poulos and Plaintiff on March 23, 2011, Poulos stated that Plaintiff was restricted to working four hours a day, four days a week; Plaintiff disagreed.  (Id. at 30:23-27.)  Poulos also stated that it was better for Plaintiff's chronic fatigue and sleep apnea to start work later in the day, but Plaintiff argued that it was actually better for her condition if she started work earlier in the day.  (Id. at 31:1-3.)  Poulos indicated that Plaintiff's work restrictions kept changing based on Management's instructions to Poulos.  (Id. at 30:28-31:1.)

Plaintiff also grieved the quality of the representation she received from Defendants and requested alternative representation.  (See, e.g., id. at 36:1-2.)  On April 21,

2011, Management refused to sign Plaintiff's request for representation.  (Id. at 33:1-2.)
On May 2, 2011, the regional coordinator assigned Jerry Bevens ("Bevens"), President of
APWU Local #761, as Plaintiff's new representative for disciplinary grievances.  (Id. at
33:27-28, 34:24.)

### C. Plaintiff's Discipline

On April 20, 2011, Poulos wrote a three-page statement to Management
regarding Plaintiff.  (Id. at 32:23-25.)  Management used this letter in its decision to
suspend Plaintiff for thirty days.  (Id. at 32:25-26.)  Plaintiff received her thirty day
suspension letter on April 28, 2011.  (Id. at 33:17-18.)  On May 9, 2011, Plaintiff received a
notice of removal.  (Id. at 34:7-9.)  On May 30, 2011, Bevens wrote a letter stating that
Plaintiff had "no chance of surviving the discipline without outside representation" and that
Poulos and Raydell Moore, ex-regional coordinator and technical advisor to the Local
APWU, were refusing to cooperate with the investigation and were working with
Blankenship and Management instead of the APWU.  (Id. at 34:24-28.)  On June 11, 2011,
Plaintiff was removed from the Postal Service.  (Id. at 35:10.)  Plaintiff claims she was
disciplined for requesting alternative representation from the APWU, time off, and
schedule changes; Poulos's statements to Management; and Plaintiff's disabilities.  (Id. at
33:1-5, 8:22-24, 32:23-26.)

After Plaintiff's removal, National APWU business agent Shirley Taylor
("Taylor") negotiated a settlement on Plaintiff's behalf wherein Plaintiff would be paid for
four hours a day from June 25, 2011 through September, 2011.  (Id. at 7:26-27.)  Plaintiff
asked Taylor if she would be removed, reinstated, or retired, and Taylor responded no.  (Id.
at 7:28-8:1.)  Taylor told Plaintiff she could not return to work because Plaintiff had
applied for disability retirement.  (Id. at 8:12-13.)  Taylor also told Plaintiff that her doctor
stated Plaintiff could not work.  (Id. at 8:15-16.)  Plaintiff alleges that many employees
apply for disability retirement and keep working until approved, her doctor did not state

1   that she could not work, she could perform her job duties if properly accommodated, and

2   Plaintiff's grievance had nothing to do with her restrictions but instead her grievance relates

3   to Plaintiff's unjust removal.  (Id. at 8:13-22.)

4   　　　　On August 10, 2011, Poulos and Danielle Bennett ("Bennett"), another shop

5   steward, announced that they had agreed to new work restrictions for Plaintiff:  fewer than

6   forty hours a week, six days a week.  (Id. at 2:4-5, 35:24-25.)  Plaintiff requested Bennett

7   file a grievance regarding the new restrictions, but Bennett told Plaintiff that she was not

8   Plaintiff's shop steward.  (Id. at 35:26-27.)  Plaintiff asked Poulos to file a grievance

9   regarding these restrictions, but Poulos refused as well.  (Id. at 35:28-36:2.)  In August

10  2011, National APWU business agent Scoggins agreed to the six-day a week assignment

11  for Plaintiff.  (Id. at 4:6-8, 36:5-6.)  Plaintiff was not happy with this new assignment

12  because it was contrary to a prior position taken by the National APWU and all but one

13  person at the August union meeting viewed this new assignment as undesirable.  (Id. at 4:6-

14  12, 36:6-7.)  The Postal Service reinstated Plaintiff on September 27, 2011.  (Id. at 36:13.)

15  　　　　After Plaintiff's reinstatement, on October 18, 2011, a shop steward bullied

16  Plaintiff, and in response, Plaintiff called threat assessment because she was crying

17  uncontrollably.  (Id. at 36:17-20.)  On October 21, 2011, Plaintiff had a mental breakdown

18  because she was unable to handle any more abuse.  (Id. at 36:21.)  From the end of October

19  to the beginning of November 2011, Plaintiff took vacation time, sick leave, and leave

20  under the Family and Medical Leave Act ("FMLA") to remove herself from the

21  environment.  (Id. at 36:22-23.)

22  　　　　**D.  History of the Present Action**

23  　　　　On February 17, 2011, Plaintiff filed an Equal Employment Opportunity

24  ("EEO") complaint against the APWU.  (Id. at 28:21.)  On March 18, 2011, Plaintiff filed

25  charges with the Equal Employment Opportunity Commission ("EEOC").  (Id. at 30:16.)

26  However, the APWU refused to mediate the EEOC grievances.  (Id. at 33:25.)  On June 23,

2011, the EEOC issued Plaintiff a Notice of Right to Sue letter.  (Id. at 35:11; Mot. for Leave (Doc. #74).)

On July 6, 2011, Plaintiff filed a Complaint (Doc. #1) in this Court against Defendants, which this Court dismissed without prejudice for insufficient service of process and failure to state a claim.  (Order (Doc #53).)  The Court ordered Plaintiff to effect proper service by November 28, 2011.  (Id.)  Plaintiff then filed an Amended Complaint (Doc. #54) on November 15, 2011.  Plaintiff filed proof of service on the National APWU on December 5, 2011 and the Local APWU on December 9, 2011.  (Proof of Serv. (Doc. #56); Proof of Serv. (Doc. #67).)  Plaintiff's Amended Complaint asserts violations of 42 U.S.C. §§ 2000e-2, 2000e-3 ("Title VII"); the Americans with Disabilities Act of 1990 ("ADA"); the Americans with Disabilities Act Amendments Act ("ADAAA"); and the Rehabilitation Act of 1973 ("Rehab Act").  Specifically, Plaintiff alleges: disability discrimination in violation of Title VII (counts I, IV, and V); retaliation in violation of Title VII (count II); hostile work environment in violation of Title VII (count III); intentional infliction of emotional distress (count VI); negligent retention (count VI)[1]; and conspiracy to violate her civil rights under 42 U.S.C. §§ 1981, 1983, 1985, 1986 (count VII).

Defendants now move to dismiss Plaintiff's Amended Complaint.  Defendants argue Plaintiff fails to state a claim upon which relief may be granted.  In addition, the National APWU argues Plaintiff failed to exhaust her administrative remedies, and the National APWU is not vicariously liable for the Local APWU's conduct.  The Local APWU asserts that Plaintiff has not filed proof of service on the Local APWU.  Plaintiff responds that she has sufficiently pled facts, if found to be true, to establish a prima facie case for each of her causes of action.  Plaintiff also argues she exhausted her administrative

///

---

[1]  Plaintiff erroneously labels two claims as Count VI.

remedies, but does not respond to the Local APWU's proof of service argument.[2]

## II. DISCUSSION

### A. Procedural Grounds for Dismissal

#### 1. Proof of Service

The Local APWU argues that Plaintiff has not filed proof of service upon the Local APWU in compliance with Federal Rule of Civil Procedure 4, and thus the Court must dismiss all claims against the Local APWU.  Plaintiff does not respond.

Federal Rule of Civil Procedure 4(m) requires that a plaintiff serve a defendant "within 120 days after the complaint is filed."  Rule 4(l)(1) provides that "[u]nless service is waived, proof of service must be made to the court.  Except for service by a United States marshal or deputy marshal, proof must be by the server's affidavit."

Here, Plaintiff filed the Amended Complaint on November 15, 2011.  (Am. Compl. (Doc. #54).)  On December 5, 2011, Plaintiff filed proof of service of the Amended Complaint on the National APWU, including an affidavit by the process server, stating that he served the National APWU on November 22, 2011.  (Proof of Serv. (Doc. #56).) Although Plaintiff did not file proof of service on the Local APWU prior to the Local APWU filing its Motion to Dismiss, on December 9, 2011, Plaintiff filed proof of service on the Local APWU, including a statement by the server that he served the Local APWU on December 7, 2011.  (Proof of Serv. (Doc. #67).)  December 5 and 9, 2011 fall within the 120 day time period for service under Rule 4(m).  Therefore, the Court will deny the Local APWU's Motion to Dismiss for improper service.

---

[2] Plaintiff attaches four letters to her Opposition.  Federal Rule of Civil Procedure 12(d) "gives courts the discretion to accept and consider extrinsic materials offered in connection with [a motion to dismiss], and to convert the motion to one for summary judgment."  Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1207 (9th Cir. 2007).  The Court declines to consider the evidence presented by Plaintiff and will not convert Defendants' motions to dismiss to motions for summary judgment.

### 2.  Exhaustion Requirement

The National APWU argues that Plaintiff did not exhaust her administrative remedies with respect to any claim against the National APWU because she did not name the National APWU in her EEOC complaint.  Plaintiff responds that she filed a charge against both Defendants, and even so, the claims against the National APWU were reasonably expected to grow out of the allegations presented to the EEOC.

To bring an ADA claim for disability discrimination,[3] a plaintiff must first exhaust her administrative remedies.  42 U.S.C. §§ 2000e-5, 12117(a) (incorporating the Title VII exhaustion requirement into Title I of the ADA); Sommatino v. United States, 255 F.3d 704, 707 (9th Cir. 2001).  To illustrate, a federal employee must notify an EEO counselor of the discrimination within forty-five days of the alleged conduct, and if the matter remains unresolved, the employee may file a formal complaint with the EEOC. Sommatino, 255 F.3d at 708.  This exhaustion requirement is statutory rather than jurisdictional.  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).  But,

---

[3]   Title VII prohibits discrimination based on race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-2.  Plaintiff describes her claims as Title VII claims for discrimination based on disability, but disability is not a protected class under Title VII.  However, at the beginning of her Amended Complaint, Plaintiff also alleges that Defendants violated her rights under the ADA.  The ADA prohibits discrimination against employees with disabilities by certain employers. 42 U.S.C. §§ 12111(5), 12112(a).  The Court will liberally construe Plaintiff's Title VII claims (counts I to V) as ADA claims.  Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." (quotation omitted)).

Plaintiff also alleges Defendants violated her rights under the Rehab Act, which prohibits discrimination against employees with disabilities by federal employers, federal contractors, and recipients of federal financial assistance. 29 U.S.C. §§ 791, 793, 794; Oliver v. Ralphs Grocery Co., 654 F.3d 903, 910 n.10 (9th Cir. 2011).  Plaintiff has not alleged that Defendants are federal employers, federal contractors, or recipients of federal financial assistance.  As such, the Court will not construe Plaintiff's Title VII claims as Rehab Act claims.  Likewise, Plaintiff alleges Defendants violated her rights under the ADAAA; however, the ADAAA merely expanded the definition of "disability" under the ADA.  Rohr v. Salt River Project Agric. Improvement & Power Dist., 555 F.3d 850, 853 (9th Cir. 2009).  Therefore, the Court will not construe Plaintiff's Title VII claims as ADAAA claims.

substantial compliance with the presentment requirements of a discrimination complaint is a jurisdictional prerequisite.  Sommatino, 255 F.3d at 708.

The district court's jurisdiction is limited to the scope of the EEOC charge and investigation, claims that are "'like or reasonably related' to the allegations made in the EEOC charge," and claims that "can reasonably be expected to grow out of" the EEOC charge and investigation.  Deppe v. United Airlines, 217 F.3d 1262, 1267 (9th Cir. 2000) (quotations omitted).  More specifically, district courts have jurisdiction over claims against parties named in the EEOC charge, parties involved in the conduct giving rise to the EEOC charge, and parties that should have anticipated that the plaintiff would bring suit against them.  Sosa v. Hiraoka, 920 F.2d 1451, 1458-59 (9th Cir. 1990) (quotations omitted).

Here, Plaintiff uses the generic term "APWU" in her EEOC Charge of Discrimination.  (Decl. of Anton Hajjar in Supp. of Defs.' Motions to Dismiss (Doc. #13), Ex. 1.)  Likewise, in her Amended Complaint, Plaintiff alleges that she filed an "EEO complaint against the APWU" and "EEOC charges [] against [the] APWU."  (Am. Compl. at 28:21, 30:16.) .  Plaintiff does not specify in her Amended Complaint whether her EEO complaint and EEOC charges were against the National APWU, the Local APWU, or both.  Construing Plaintiff's pro se Amended Complaint liberally, the Court finds that Plaintiff filed an EEO complaint and EEOC charges against both Defendants.

But even assuming Plaintiff did not name the National APWU in her EEO complaint and EEOC charges, the National APWU was involved in the acts giving rise to the EEOC claims and should have anticipated that Plaintiff would bring suit against it.  For example, National APWU business agents Scoggins and Ybarra withdrew grievances, settled grievances in favor of Management, and advised Poulos to withdraw and not file grievances on Plaintiff's behalf.  (Id. at 5:8-11, 10:9-11.)  Accordingly, the Court has jurisdiction over Plaintiff's claims against Defendants, and thus, the Court will deny the National APWU's Motion to Dismiss for failure to exhaust administrative remedies.

**B.  Substantive Grounds for Dismissal**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move the Court for the dismissal of a complaint based upon its "failure to state a claim upon which relief can be granted."  In considering whether the complaint is sufficient to state a claim, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party."  Wyler Summit P'ship v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998).  To succeed on such a motion, the defendant must show the plaintiff does not make sufficient factual allegations to establish a plausible entitlement to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555.  "In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."  Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis omitted).

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted).  Thus, the court "must afford plaintiff the benefit of any doubt" in construing a pro se complaint.  Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).

### 1.  Disability Discrimination—Counts I, IV, and V

Defendants contend Plaintiff's Amended Complaint does not allege facts establishing that the alleged discriminatory conduct was because of Plaintiff's disability. The National APWU in particular argues that Plaintiff does not allege facts tying the National APWU to the alleged discriminatory conduct.  Both Defendants argue they were

under no affirmative duty to combat discrimination.  Even so, Defendants contend they have not taken adverse action or any type of action that would dissuade a reasonable employee from engaging in a protected activity.  In response, Plaintiff argues that she (1) suffers from a disability because her physical and mental impairments substantially limit her major life activities and Defendants knew about these impairments; (2) was qualified for and satisfied the requirements of her position; (3) requested an accommodation; and (4) suffered adverse employment actions because of her disability.

The ADA provides, in relevant part, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees."  42 U.S.C. § 12112(a).  The ADA defines discrimination as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  Id. § 12112(b)(5)(A).  To state a prima facie case under the ADA, a plaintiff must demonstrate (1) she is disabled within the meaning of the ADA, (2) she is a qualified individual, and (3) she suffered an adverse employment action because of her disability.  Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999).  Here, Defendants do not dispute that Plaintiff is disabled within the meaning of the ADA and a qualified individual.  However, Defendants dispute whether Plaintiff suffered an adverse employment action because of her disability.

*a.  Adverse Employment Action*

The United States Court of Appeals for the Ninth Circuit has not specifically defined "adverse employment action" for purposes of an ADA discrimination claim.  But, "[i]t is beyond challenge that a person's termination is considered an adverse employment action."  Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1089 (9th Cir. 2001).  Likewise, disciplinary suspension is an adverse employment action giving rise to a

disability discrimination claim.  See Raad v. Fairbanks N. Star Borough Sch. Dist., 323

F.3d 1185, 1196 (9th Cir. 2003).  Adverse employment actions also include "refusing to

make reasonable accommodations for a plaintiff's disabilities."  Colwell v. Rite Aid Corp.,

602 F.3d 495, 504 (3d Cir. 2010) (quotation omitted).  Specifically, an employer

discriminates by "not making reasonable accommodations to the known physical or mental

limitations of an otherwise qualified individual with a disability who is an applicant or

employee, unless such covered entity can demonstrate that the accommodation would

impose an undue hardship on the operation of the business of such covered entity."

42 U.S.C. § 12112(b)(5)(A).

Unions shall not "cause or attempt to cause an employer to discriminate against

an individual in violation of [Title VII]."  42 U.S.C. § 2000e-2(c)(3).  More specifically,

unions may be liable for refusing to file grievances concerning discrimination.  Goodman v.

Lukens Steel Co., 482 U.S. 656, 669 (1987), superceded by statute on other grounds as

recognized in Johnson v. Lucent Technologies Inc., 653 F.3d 1000, 1005-06 (9th Cir.

2011)).  Unions also may be liable for acquiescing or joining in an employer's

discriminatory practices.  Bonilla v. Oakland Scavenger Co., 697 F.2d 1297, 1304 (9th Cir.

1982).  The United States Supreme Court has applied these rules of union liability to other

federal anti-discrimination laws.  14 Penn Plaza L.L.C. v. Pyett, 556 U.S. 247, 272 (2009)

(discussing union liability generally under federal anti-discrimination laws and applying

these rules specifically to the Age Discrimination in Employment Act ("ADEA")).

In her Amended Complaint, Plaintiff alleges that Defendants took adverse

employment action against Plaintiff by refusing to file grievances alleging discrimination

and by joining in Management's discriminatory practices.  (Am. Compl. at 4:15-17, 9:13-

23, 10:9-11.)  Plaintiff alleges the following constitute adverse employment actions taken

by Management:  cut hours, adverse scheduling, failure to accommodate, constructive

suspension, suspension, removal, and breach of grievance settlements.  (Id. at 4:24-25,

9:13-23.)  Viewing the facts in the light most favorable to Plaintiff, Plaintiff has alleged

sufficient facts to support a claim of adverse employment action. Management refused to

accommodate Plaintiff, suspended Plaintiff, and ultimately removed Plaintiff, all of which

constitute adverse employment actions.  Similarly, Plaintiff has pled sufficient facts to

support a claim that Defendants are liable for Management's discriminatory practices.

Defendants refused to file grievances and joined in Management's discriminatory practices.

For example, Poulos communicated with Plaintiff regarding adverse scheduling and work

restrictions and wrote a three-page statement to Management, which Plaintiff alleges

Management used in making its decision to suspend and remove Plaintiff.

### b.  *"Because of" Plaintiff's Disability*

An employer takes an adverse action "because of" the plaintiff's disability if the

action was motivated, even in part, by animus towards the plaintiff's disability or request

for accommodation.  Dark v. Curry Cnty., 451 F.3d 1078, 1084-85 (9th Cir. 2006).  Thus,

the ADA applies when the plaintiff's "disability is one factor, but not the only factor,

motivating an adverse employment action." Head v. Glacier Nw. Inc., 413 F.3d 1053, 1065

n.63 (9th Cir. 2005) (quotation omitted).  But a decision motivated by factors merely

related to the plaintiff's disability is not prohibited by the ADA.  See Lopez v. Pac. Mar.

Ass'n, 657 F.3d 762, 764 (9th Cir. 2011).

Here, viewing the facts alleged in the light most favorable to Plaintiff, Plaintiff

has alleged sufficient facts to support a claim that Defendants' refusals to file grievances

and involvement in Management's discriminatory practices were motivated, at least in part,

by animus towards Plaintiff's disabilities or requests for accommodation.  In particular,

Poulos removed Plaintiff as shop steward the day after Plaintiff did not attend a grievance

meeting because Plaintiff's legs and feet locked up severely.  (Am. Compl. at 6:8-12,

24:15-17, 19-20.)  Poulos referred to Plaintiff's condition as a "stunt."  (Id. at 6:10-12.)

Poulos, Scoggins, and Ybarra withdrew grievances, some of which alleged discrimination.

(Id. at 10:9-11, 26:5-9, 17.)  Plaintiff requested an accommodation due to her medical conditions, and on the same day Weyen refused to file grievances.  (Id. at 27:16-23.) Poulos stated that the work restrictions imposed by Management were due to Plaintiff's medical conditions and Poulos refused to file grievances opposing these work restrictions. (Id. at 30:23-28, 31:1-8.)  Accordingly, Plaintiff has alleged sufficient facts to support a plausible disability discrimination claim under the ADA.  The Court will deny Defendants' motions to dismiss Plaintiff's disability discrimination claims.

### 2.  Retaliation—Count II

To state a prima facie case of retaliation under the ADA, the plaintiff must demonstrate "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two."  Alvarado v. Cajun Operating Co., 588 F.3d 1261, 1269 (9th Cir. 2009).  A plaintiff engages in a protected activity by pursuing her rights under the ADA, for example, by filing union grievances and EEOC charges.  Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 850 (9th Cir. 2004).  For purposes of an ADA retaliation claim, an action constitutes an adverse employment action if it is "reasonably likely to deter employees from engaging in protected activity."  Id. (quotation omitted).  Lastly, a casual link can be inferred from circumstantial evidence, such as an employer's knowledge and temporal proximity between the protected activity and the adverse employment action. Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (employer was aware of the plaintiff's EEOC complaint and took adverse employment action within three months of filing); see also Bell v. Clackamas Cnty., 341 F.3d 858, 865 (9th Cir. 2003) (noting that temporal proximity alone can be sufficient).

Plaintiff has pled sufficient facts to support a claim that she engaged in protected activity by filing union grievances and EEOC charges.  As discussed above, Plaintiff also has alleged sufficient facts to support a claim that Management took adverse employment action against Plaintiff and Defendants are liable for Management's actions because

Defendants refused to file grievances on Plaintiff's behalf and joined in Management's

discriminatory practices.  Lastly, Plaintiff has pled sufficient facts to infer a causal link

between Plaintiff's protected activity and the adverse employment action because

Defendants were aware of Plaintiff's EEOC charges and Management removed Plaintiff

fewer than three months after she filed EEOC charges.  Accordingly, Plaintiff has alleged

sufficient facts to support a plausible retaliation claim under the ADA.  The Court will deny

Defendants' motions to dismiss Plaintiff's retaliation claim.

### 3.  Hostile Work Environment—Count III

It is unsettled whether a cause of action for a hostile work environment claim

exists under the ADA.  Brown v. City of Tucson, 336 F.3d 1181, 1190 (9th Cir. 2003).

Assuming without deciding that such a claim exists, courts would likely apply Title VII

law.  See McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 563 (5th Cir. 1998).

Consequently, if such a claim exists, a plaintiff must prove:

> (1) that she belongs to a protected group; (2) that she was subjected to
> unwelcome harassment; (3) that the harassment complained of was
> based on her disability or disabilities; (4) that the harassment
> complained of affected a term, condition, or privilege of employment;
> and (5) that the employer knew or should have known of the
> harassment and failed to take prompt, remedial action.

Flowers v. S. Reg'l Physician Servs. Inc., 247 F.3d 229, 235-236 (5th Cir. 2001) (quotation

omitted).  An "objectionable environment must be both objectively and subjectively

offensive, one that a reasonable person would find hostile or abusive, and one that the

victim in fact did perceive to be so."  Faragher v. City of Boca Raton, 524 U.S. 775, 787

(1998).  The Court considers the totality of the circumstances in determining whether

conduct is sufficiently severe or pervasive.  Brooks v. City of San Mateo, 229 F.3d 917,

923 (9th Cir. 2000).  The Court considers "frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

and whether it unreasonably interferes with an employee's work performance."  Faragher,

524 U.S. at 787-88 (quotation omitted).  However, anti-discrimination laws are not a general civility code, therefore, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  Id. at 788 (internal citation and quotation marks omitted).

In her Amended Complaint, Plaintiff alleges that Poulos was openly hostile towards Plaintiff every time she requested that Poulos file a grievance on her behalf, and Poulos told Plaintiff that she was the only one having problems.  (Am. Compl. at 11:6-8.) Plaintiff has not alleged sufficient facts to demonstrate that this was more than an offensive utterance.  Plaintiff also alleges Poulos refused to address Management's "continual and constant mental abuse/harassment."  (Id. at 11:1-2.)  After her reinstatement, Plaintiff called threat assessment to report bullying from the APWU shop steward and a co-worker.  (Id. at 36:17-20.)  Three days later, Plaintiff alleges she had a mental breakdown because of the abuse, after which she took vacation and sick leave to remove herself from the environment.  (Id. at 36:21-22.)  Although Plaintiff alleges sufficient facts to demonstrate that she subjectively found her work environment hostile and abusive, Plaintiff does not allege specific incidents of mental abuse, harassment, or bullying sufficient for the Court to evaluate whether a reasonable person would find the work environment hostile and abusive. Furthermore, Plaintiff has not alleged that the mental abuse, harassment, or bullying was based on her disability.  Accordingly, Plaintiff has failed to plead sufficient facts to support a hostile work environment claim, and the Court will grant Defendants' motions to dismiss Plaintiff's hostile work environment claim.

### 4.  Intentional Infliction of Emotional Distress—Count VI

Defendants argue Plaintiff's intentional infliction of emotional distress ("IIED") claim does not amount to an intentional infliction tort and is preempted by § 301 of the Labor Management Relations Act ("LMRA").  Plaintiff responds that Defendants' conduct was extreme and outrageous—namely, the extinguishment of her rights, collusion with

Management to suspend and remove Plaintiff, and refusal to mediate at the EEOC—and such conduct caused emotional distress, evidenced by Plaintiff's psychological care and medication.  Plaintiff also argues that the Court need not interpret the Collective Bargaining Agreement ("CBA") to evaluate whether Defendant extinguished Plaintiff's rights and colluded with Management.

To establish a claim for intentional infliction of emotional distress, a plaintiff must prove: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation."  Star v. Rabello, 625 P.2d 90, 91-92 (Nev. 1981).  Extreme and outrageous conduct exceeds "all bounds of decency" and is "utterly intolerable in a civilized community."  Maduike v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted).  Persons must be expected and required to tolerate occasional acts, which are inconsiderate and unkind.  Id.  "Liability for emotional distress will not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'"  Candelore v. Clark Cnty. Sanitation Dist., 975 F.2d 588, 591 (9th Cir. 1992) (quoting Restatement (Second) of Torts § 46 cmt. d).

Plaintiff argues that the same conduct that gives rise to her discrimination claims forms the basis of her IIED claim.  These acts, although arguably offensive, inconsiderate, and unkind, do not rise to the level of extreme and outrageous such that they exceed "all bounds of decency."  "Discriminatory employment practices are wrong and federal law makes such conduct unlawful and provides for relief; however, the tort of intentional infliction of emotional distress is not intended to reach every discrimination claim."  Alam v. Reno Hilton Corp., 819 F. Supp. 905, 911 (D. Nev. 1993).  Therefore, the Court will grant Defendants' motions to dismiss Plaintiff's IIED claim.

### 5.  Negligent Retention—Count VI

Defendants contend that because APWU officials are elected, they cannot be

negligently retained by the APWU.  Plaintiff responds that the National APWU was negligent in failing to investigate national and local officials' discriminatory conduct of which the National APWU was aware, failing to suspend officials for such conduct, and retaining officials despite such conduct.

An employer has a general duty to use reasonable care in the retention of employees to ensure that employees are fit for their positions.  Hall v. SSF, Inc., 930 P.2d 94, 99 (Nev. 1996).  The employer breaches this duty when the employer hires or retains an employee that the employer knew or should have known might cause harm to others.  See id. at 98-99; see also Chavez v. Thomas & Betts Corp., 396 F.3d 1088, 1099 (10th Cir. 2005), overruled on other grounds by Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171 n.2 (10th Cir. 2006).

Here, Plaintiff alleges that Defendants retained national and local officials despite being aware that such officials were discriminating and otherwise causing harm to Plaintiff.  As such, Plaintiff has pled sufficient facts to state a claim for negligent retention. Defendants have not offered support for their contention that an employer cannot negligently retain an elected official.  Accordingly, the Court will deny Defendants' motions to dismiss Plaintiff's negligent retention claim.

### 7.  Conspiracy to Violate Civil Rights—Count VII

Defendants argue that Plaintiff's conspiracy claim under 42 U.S.C. § 1985 should be dismissed because § 1985 is unavailable as a remedy for Title VII violations. Plaintiff does not respond to this position; rather, Plaintiff argues that she has established a prima facie case of conspiracy under § 1985 by circumstantial evidence.

Section 1985(3) provides a remedy for certain types of conspiracies as described within the statute;[4] it does not provide a remedy for a claim of conspiracy to violate Title

---

[4]  To state a claim for relief under § 1985(3) a plaintiff must establish that the defendant did

VII.  <u>Great Am. Fed. Sav. & Loan Ass'n v. Novotny</u>, 442 U.S. 366, 372-78 (1979), <u>superseded by statute on other grounds as recognized in</u> <u>Alexander v. Gerhardt Enters., Inc.</u>, 40 F.3d 187, 191-92 (7th Cir. 1994).  Title VII remedies are not available to a plaintiff unless that plaintiff exhausts her administrative remedies.  <u>Id.</u> at 372-73.  For example, as discussed above, a plaintiff must file a claim with the EEOC before bringing suit for discrimination.  If a plaintiff could assert a Title VII violation through § 1985, then the plaintiff could circumvent the administrative requirements set forth in Title VII.  <u>Id.</u> at 375-76.  Thus, "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)."  <u>Id.</u> at 378.

Because the same administrative requirements set forth in Title VII apply to the ADA under 42 U.S.C. § 12117(a), the Supreme Court's reasoning in <u>Novotny</u> applies to a claim of conspiracy to violate the ADA.  <u>Adler v. I & M Rail Link, L.L.C.</u>, 13 F. Supp. 2d 912, 941-43 (N.D. Iowa 1998) (applying <u>Novotny</u> to claims of conspiracy to violate the ADA and ADEA), <u>abrogated on other grounds by</u> <u>Cossette v. Minn. Power & Light</u>, 188 F.3d 964, 970 n.4 (8th Cir. 1999); <u>Jones v. Baskin, Flaherty, Elliot and Mannino, P.C.</u>, 738 F. Supp. 937, 940-41 (W.D. Pa. 1989), <u>aff'd</u>, 897 F.2d 522 (3d Cir.), <u>cert. denied</u>, 498 U.S. 811 (1990) (applying <u>Novotny</u> to a claim of conspiracy to violate the ADEA); <u>Brownfield v. Yellow Freight Sys.</u>, No. 98-15775, 1999 WL 439310, at *1 (9th Cir. June 17, 1999) (applying <u>Novotny</u> to claims of conspiracy to violate Title VII and the ADA).  Therefore, § 1985(3) does not provide a remedy for a claim of conspiracy to violate the ADA, and the Court will grant Defendants' motions to dismiss Plaintiff's § 1985 claim.

---

(1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of (the) conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'

<u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102-103 (1971).

Section 1986 imposes liability on persons who have knowledge of an impending violation of § 1985 and have power to prevent the violation but neglect or refuse to do so.[5] Karim-Panahi, 839 F.2d at 626.  "A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985."  Id.  Because Plaintiff fails to state a valid claim under § 1985, the Court will grant Defendants' motions to dismiss Plaintiff's § 1986 claim.[6]

### 8.  Vicarious Liability

Defendants argue the National APWU is not vicariously liable for the Local APWU's conduct simply by virtue of their affiliation, and Plaintiff's general statements that the National APWU business agents were agents of the Local APWU are insufficient to state a claim of vicarious liability.  Plaintiff responds that she has alleged facts that demonstrate that the National APWU was making decisions for the Local APWU.  For example, the National APWU regularly advised the Local APWU officials, the National APWU colluded with the Local APWU officials, and the National APWU withdrew grievances.

Courts use principles of common-law agency to determine whether an international union is vicariously liable for the actions of its local subsidiary.  Carbon Fuel Co. v. United Mine Workers of Am., 444 U.S. 212, 216-217 (1979).

---

[5]  42 U.S.C. § 1986 provides:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

[6]   Plaintiff also alleges that Defendants violated 42 U.S.C. § 1981 and § 1983; however, neither statute applies to this action.  Section 1981 prohibits race discrimination in the making and enforcing of contracts.  Section 1983 prohibits violations of rights secured by the Constitution by persons acting under color of law.  Plaintiff does not allege race discrimination, nor does Plaintiff allege Defendants acted under color of law.   The Court will construe Plaintiff's conspiracy claim as a claim for violations of § 1985 and § 1986 only.

> Thus, if the local engages in illegal conduct in furtherance of its role as an agent of the international, the international will be liable for the local's actions. . . . However, if the local exercises considerable autonomy in conducting its affairs, it cannot be regarded as an agent of the international, and the international accordingly cannot be held liable under an agency theory for the local's actions.

Laughon v. Int'l Alliance of Theatrical Stage Emps., 248 F.3d 931, 935 (9th Cir. 2001).  An international union may be liable for a local subsidiary if the international union "instigated, supported, ratified or encouraged the [l]ocal's activities."  Moore v. Local Union 569 of Int'l Bhd. of Elec. Workers, 989 F.2d 1534, 1543 (9th Cir. 1993).

Plaintiff has sufficiently pled facts that show the National APWU instigated, supported, ratified, or encouraged the Local APWU's activities.  As discussed above, the National APWU was involved in withdrawing grievances, refusing to file grievances, and disciplining Plaintiff.  Therefore, the Court will deny the National APWU's Motion to Dismiss Plaintiff's vicarious liability claim.

**III. CONCLUSION**

IT IS THEREFORE ORDERED that Defendant APWU National AFL-CIO's Motion to Dismiss Amended Complaint (Doc. #60) and Defendant Local APWU  #7156's Motion to Dismiss Amended Complaint (Doc. #57) are hereby GRANTED in part and DENIED in part.  The Motions are GRANTED as to Plaintiff's claims of hostile work environment, intentional infliction of emotional distress, and violations of 42 U.S.C. § 1985 and § 1986.  The Motions are DENIED in all other respects.

DATED:  June 18, 2012

_____
PHILIP M. PRO
United States District Judge

21