# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROSEMARY GARITY,<br><br>        Plaintiff,<br><br>    v.<br><br>APWU-AFL-CIO, et al.,<br><br>        Defendants. | Case No. 2:11-cv-01109-APG-CWH<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; (2) DENYING PLAINTIFF'S MOTION TO STRIKE; AND (3) DENYING DEFENDANT'S MOTION TO STRIKE**<br><br>(ECF Nos. 182, 188, 204) |

      In 2011, plaintiff Rosemary Garity sued defendants APWU National Labor Organization (APWU) and its local affiliate, APWU Local #7156, for various causes of action under federal and state law based on her experiences working for the United States Postal Service (USPS) at the Pahrump post office. In 2012, the local dissolved and was dismissed from the case, leaving APWU as the lone defendant. Seven years and two trips to the Ninth Circuit later, only three claims remain: disparate treatment, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*.

      APWU now moves for summary judgment, arguing that Garity cannot establish a prima facie case for any of her claims. APWU contends that it is not liable for the actions of the local, and that there is no evidence that any of the actions taken by the national union or its agents were motivated by Garity's alleged disability or protected activity. Garity responds that APWU took adverse actions against her, primarily its inaction in response to actions by the local and USPS. She also contends that APWU is liable for the actions of the local, and those actions (including the handling of union grievances and disciplinary actions) were discriminatory and retaliatory based on her disability and pursuit of her rights under the ADA.

      The parties are familiar with the facts of the case and I will not repeat them here except where necessary. The local union was not acting as an agent of APWU, nor did APWU instigate

or ratify the local's actions such that APWU can be held vicariously liable for them. To the extent any of the APWU's actions can be understood as adverse, Garity has not shown that they were motivated by her disability or protected activity. Therefore, I grant summary judgment to APWU on all of Garity's claims. I also deny both parties' motions to strike each other's filings.

## I. ANALYSIS

### A. Garity's Motion to Strike (ECF No. 188)

Before filing her opposition to APWU's motion for summary judgment, Garity moved to strike the summary judgment motion and objected to APWU's evidence. This motion primarily consists of arguments that belong in an opposition. ECF No. 188. I granted Garity the ability to file an opposition 15 pages over the typical page limit. ECF No. 185. She did not request, nor did she receive, permission to file what is essentially a second brief in opposition to the defendant's motion. Garity's motion, which goes nearly line-by-line through the motion for summary judgment, primarily contains legal argument about issues in the case and disputes as to APWU's interpretation of the facts.

Under Federal Rule of Civil Procedure 12(f), I "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Under Rule 56(c)(2), a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Even considering the arguments that might be properly brought in this motion, I do not find them convincing.

Garity does not argue that the motion for summary judgment is redundant, immaterial, impertinent, or scandalous. She first argues that any testimony relied on by APWU that contradicts the testimony of APWU's Rule 30(b)(6) witness must be stricken, relying on the sham affidavit rule. Under that rule, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). However, Garity does not identify any contradictory testimony that should be stricken, instead pointing to legal argument and citations to documents in the record, none of which Garity argues were not produced or are inadmissible in any other way. Moreover, the contradictions that

Garity believes exist between the motion and the deposition testimony appear to be primarily a function of her presenting to the court out-of-context portions of the transcript or her interpretation of the testimony. This is not sufficient reason to strike every part of the summary judgment motion that Garity believes is not supported by the deposition testimony.

Garity next argues that APWU's counsel should be sanctioned under 28 U.S.C. § 1927 for misrepresenting facts and misstating the law. Under that statute, attorneys "who so multiply the proceedings in any case unreasonably and vexatiously" may be liable for costs and fees. To the extent that Garity contends APWU's counsel has perpetrated a fraud on the court, she must show "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1168 (9th Cir. 2017). Garity produces no evidence (nor does she argue) that APWU's counsel has unreasonably or vexatiously multiplied the proceedings. Nor does she produce evidence of a plan or scheme to defraud the court. Instead, she disputes APWU's interpretation of the evidence and applicable law. These are arguments that belong in her opposition and are insufficient to impose sanctions or find fraud on the court.

Finally, Garity argues that certain documents cited by APWU, including a workplace climate survey and a letter recounting a USPS meeting about possible workplace accommodations, include hearsay and should be stricken. I do not rely on these documents for my rulings, so striking them is unnecessary. Thus, Garity's evidentiary objections are unavailing, and I deny her motion.

### B. APWU's Motion for Summary Judgment (ECF No. 182)

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

1   The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and draw reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenck, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

1. National APWU's Liability for the Actions of the Local Union

Garity claims that the national is responsible for the actions of its local affiliate. APWU responds that there is no evidence showing that the local acted as the national's agent or that the national instigated, supported, ratified, or encouraged the local's alleged violations of the ADA such that the national could be liable for these violations.

APWU can be held liable for alleged violations of the ADA by the local union in two ways. The first is under common law agency principles. *Carbon Fuel Co. v. United Mine Workers of Am.*, 444 U.S. 212, 216–17 (1979). "[I]f the local engages in illegal conduct in furtherance of its role as an agent of the [national], the [national] will be liable for the local's actions." *Laughon v. Int'l All. of Theatrical Stage Emps., Moving Picture Technicians, Artists & Allied Crafts of the U.S. & Can.*, 248 F.3d 931, 935 (9th Cir. 2001). On the other hand, "if the local exercises considerable autonomy in conducting its affairs, it cannot be regarded as an agent of the [national], and the [national] accordingly cannot be held liable under an agency theory for the local's actions." *Id.* In determining whether an agency relationship exists, I look both to the national's constitution as well as the actual relationship between the local and the national. *Id.* "To analyze the actual relationship, [I] consider the local's election of its own officers, ability to hire and fire its own employees, maintenance of its own treasury and independent conduct of its daily business as determinative factors." *Id.*

The national also may be liable for the actions of the local if the national "instigated, supported, ratified or encouraged the Local's activities . . . ." *Moore v. Local Union 569 of Int'l*

*Bhd. of Elec. Workers*, 989 F.2d 1534, 1543 (9th Cir. 1993). "[C]onstructive knowledge of the Local's possibly illegal activity does not impose on the [national] a legal duty to intervene." *Id.*

### a. Law of the Case

Garity points out that, in ruling on an earlier motion to dismiss, Judge Pro found that she had sufficiently pleaded facts showing APWU was vicariously liable for the local's actions.[1] ECF No. 76 at 21. Garity argues that APWU's vicarious liability is thus no longer in issue. APWU responds that Judge Pro's finding meant only that Garity survived the motion to dismiss, not that she had proven APWU's vicarious liability as a matter of law. I agree.

The law of the case doctrine "generally precludes a court from reconsidering an issue decided previously by the same court or by a higher court in the identical case." *Hall v. City of L.A.*, 697 F.3d 1059, 1067 (9th Cir. 2012). "The issue in question must have been decided explicitly or by necessary implication in the previous disposition," and application of the doctrine is discretionary. *Id.*

Judge Pro found that Garity pleaded sufficient facts that, if they were taken as true, would prove APWU was vicariously liable for the actions of the local. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) ("On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party."). He did not find that Garity had proven APWU was vicariously liable for the local's actions, but rather that claims based on vicarious liability survived dismissal at that stage of the case. In a subsequent order, Judge Pro dismissed Garity's ADA claims based on issue preclusion. ECF No. 126. Garity appealed this order, and the Ninth Circuit reversed and remanded. *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848 (9th Cir. 2016). In its opinion, the Ninth Circuit specifically stated that it was not addressing the merits of Garity's claims. *Id.* at

---

[1] This argument is nearly identical to an argument Garity makes in her motion to strike. *See* ECF No. 188 at 2–7. It is better addressed here in the context of her opposition to the motion for summary judgment.

864. Thus, the issue of whether APWU is vicariously liable for the local's actions has not been decided either by the district or appellate court.[2] I am not precluded from considering the issue.

b. *Common Law Agency*

The APWU constitution states that each "chartered subordinate body shall be fully autonomous." ECF No. 182-27 at 2. The now-dissolved local had its own constitution and bylaws, which governed membership, elections, meetings, fees, and fiscal policy. ECF No. 182-13. In addition, minutes from the local's meetings show it governed its own affairs without oversight from the national. ECF No. 182-12. The local also decided on its own to dissolve without being forced to do so by the national. ECF No. 182-33. This evidence tends to show that both as a matter of the union's constitution and the actual relationship between the local and national, the local exercised considerable autonomy.

Most of Garity's arguments in response, including that the national exerted a high degree of control over the local and that the national was involved in the local's dissolution, are not supported by evidence in the record. She points to the fact that National Business Agents (NBAs)—who are officers of the national—have jurisdiction over grievances at the third stage of the process and that certain NBAs were involved to some extent in the grievance process for many of her grievances. ECF Nos. 197-62 at 25; 197-65 at 4; 197-21 at 11, 103. However, the evidence Garity points to does not show the national controlled the local's activity. With regard to the withdrawal of grievances by former local president Kathi Poulos, multiple witnesses testified that the NBAs acted in a purely advisory role. *See* ECF Nos. 197-21 at 11, 38–39; 182-20 at 8; 182-28 at 3. Moreover, the fact that the union's grievance structure included eventual involvement by the national does not show that the local union acted as the national's agent. Even making all reasonable inferences in favor of Garity, she has not pointed to evidence that

---

[2] Nor did APWU waive this argument by not raising it at the appellate level. Garity appealed the first dismissal, which was upheld in its entirety. *Garity v. APWU Nat'l Labor Org.*, 655 Fed. App'x 523 (9th Cir. 2016). The court's finding regarding vicarious liability was not at issue in that appeal. It was also not at issue in the appeal of the second dismissal based on issue preclusion.

raises a material issue of fact as to whether the local was acting as APWU's agent under common law agency principles. It was not.

### c. *Instigate, Support, Ratify, Encourage*

APWU contends that there is no evidence that it instigated, supported, ratified, or encouraged any violations of the ADA by the local. It relies primarily on two cases holding that inaction by a national or international in response to notifications from local members about alleged abuses does not meet this test. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1289 (3d Cir. 1991); *Rodonich v. House Wreckers Union Local 95 of Laborers' Int'l Union*, 817 F.2d 967, 973–74 (2d Cir. 1987). In *Brenner*, the Third Circuit held the plaintiffs had not shown encouragement or ratification because receiving letters with allegations of fact shows at most constructive knowledge that is insufficient to impose a legal duty upon the international union to intervene in a local's affairs. 927 F.2d at 1289. In *Rodonich*, the Second Circuit held that ratification required full knowledge of the alleged violations, and upheld a jury instruction stating that the "mere fact that the International had oral or written statements . . . does not establish full knowledge . . . of the facts asserted in those statements and letters." 817 F.2d at 973 (internal quotation and citation omitted); *see also id.* at 974 (upholding a jury instruction making clear that the international had no independent duty to intervene in the local's affairs).

APWU contends that the internal charges Garity attempted to appeal to the national dealt primarily with charges unrelated to disability discrimination. ECF Nos. 182-34; 182-35. The first appeal letter, dated February 7, 2011, asserts charges against Poulos regarding union issues, as well as an additional charge of "Title VII discrimination on the basis of retaliation for EEO activity by being a part of the decision to remove me as shop steward to deny me the right of experienced representation denying me due process." ECF No. 182-34 at 2. The second letter, dated April 9, 2012,[3] asserts various charges unrelated to discrimination, as well as discrimination against someone other than Garity. ECF No. 182-35 at 2–3. Even construing these letters

---

[3] The handwritten date on the letter is "04-09-12" but the letter refers repeatedly to April 2011.

generously, the receipt of either by APWU is insufficient to impose on it a duty to intervene in the local's affairs. *See Brenner*, 927 F.2d at 1289; *Rodonich*, 817 F.2d at 973–74. At most, the letters would give the national constructive knowledge of the local's actions, which does not rise to the level of instigation, support, ratification, or encouragement.

Garity contends that her communications to APWU regarding the local's actions—and APWU's inaction in response—are sufficient to hold the national liable. In support of this argument, Garity cites to a 111-page exhibit comprised of emails from Garity to national officials, grievances Garity filed, handwritten notes, grievance settlements and withdrawals, NLRB charges against the local union, appeals of internal charges to the national, email chains among USPS officials and national officials, and letters from Garity to APWU's president. ECF No. 197-54. These documents do not specifically address the local's alleged disability discrimination and retaliation. Even if Garity's emails and grievance appeals to APWU officials show that APWU had constructive knowledge of the alleged ADA violations, Garity has not pointed to any evidence showing that APWU affirmatively instigated, encouraged, supported, or ratified these actions.

Garity also produces a letter from Cliff Guffey, the APWU president, in which he writes that he is assigning Omar Gonzalez (APWU Regional Coordinator) "to investigate and for a response." ECF No. 197-89. This letter is dated October 3, 2011, and does not specify what Gonzalez is to be investigating. Nor does Garity produce evidence that Gonzalez did not in fact investigate whatever he was assigned to investigate.[4] *Cf. Brenner*, 927 F.2d at 1289 (finding that the international union was not required to credit as true the plaintiff's allegations in letters, and noting that the international had conducted investigations in response to some of the letters). The Guffey letter does not show support or ratification of any action by the local, or even inaction by the national.

---

[4] Indeed, Garity produced emails from her to Gonzalez that support an inference that he did take steps to investigate or at least reach out to her. *See* ECF No. 54 at 3–4.

In sum, Garity has failed to demonstrate a genuine issue of material fact as to whether APWU is liable for the local's actions. It is not. Therefore, to the extent that Garity's claims rely on actions taken only by members of the local union, I grant summary judgment to APWU.

### 2. Disability Discrimination

#### a. Disparate Treatment

To "establish a prima facie case of discrimination under the ADA [the plaintiff] must show that she: (1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of her disability." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). As applied to a discrimination claim against a union, the plaintiff must show either direct evidence of discrimination by the union or evidence that the union treated her less favorably than non-disabled, similarly situated individuals. *See Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 882 (9th Cir. 2007) (holding a union member can make out a prima facie claim of discrimination under Title VII if it "deliberately declines to pursue a member's claim" because of her protected class or treats her less favorably than others similarly situated);[5] *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 214 (5th Cir. 2011).

The parties dispute the causation standard for proving disability discrimination. APWU contends that but-for causation is required, relying on *Gross v. FBL Financial Services*, 557 U.S. 167 (2009). In *Gross*, the Supreme Court held that the text of the Age Discrimination in Employment Act (ADEA) "does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor. Moreover, Congress neglected to add such a provision to the ADEA when it amended Title VII" to change the causation standard to a motivating factor. *Id.* at 174. APWU argues that because the ADA—like the ADEA—was not amended as Title VII was, the plaintiff must show but-for causation. Garity contends that her disability must be a motivating factor, rather than the but-for cause of any adverse actions. *See Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005) (applying the motivating

---

[5] Courts "generally use Title VII precedent to interpret ADA claims." *Garity*, 828 F.3d at 858 n.9.

factor standard), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360–62 (2013) (holding Title VII retaliation claims must be proved applying a but-for causation standard); *see also Phillips v. Victor Cmty. Support Servs., Inc.*, 692 Fed. App'x 920, 921 (9th Cir. 2017) (finding the district court correctly applied the motivating factor standard). I need not decide this issue, because even applying the more generous standard advocated by Garity, I still find that she has not shown a genuine issue of material fact that her disability was the motivating factor behind any APWU action. *Cf. Bukiri v. Lynch*, 648 Fed. App'x 729, 731 n.1 (9th Cir. 2016) (noting that other circuits have "retreated from the motivating factor standard in ADA cases" but declining to decide the correct standard because it did not affect the outcome of the case).

APWU argues that the national did not take any adverse actions against Garity. It notes that resolving grievances in a manner unfavorable to Garity does not mean that she was treated adversely. APWU points to two non-disability-related grievances settled by NBA Gilbert Ybarra, one finding a violation (ruling in favor of Garity) and the other finding no evidence of a violation. ECF Nos. 182-37; 182-38. APWU also reiterates its argument that Garity's communications to the national did not impose on it an affirmative duty to intervene in the local such that its inaction could be considered an adverse action. Finally, APWU contends there is no evidence that it failed to properly represent Garity in her grievances or treated her any differently than similarly situated individuals.

In her opposition, Garity lists over twenty actions she considers to be adverse. However, the majority of those actions were taken by USPS or local union officials. For example, Garity argues that her hours were cut, she was accused of murder, and she was not allowed to perform certain duties at the post office. Because APWU is not liable for the actions of the local or USPS, these actions cannot form the basis of Garity's claim. With respect to actions involving APWU, Garity contends that certain of her grievances were withdrawn or settled, she was without valid representation, she was given a six-day work assignment in violation of her medical restrictions,

NBA Shirley Taylor tried to prevent her from receiving back pay, and the national did not take action upon Garity notifying it of discrimination.[6]

However, even assuming that the evidence shows these actions occurred, Garity produces no evidence that APWU took any of them because of her disability or that she was treated differently than similarly situated union members. The one adverse action Garity points to involving similarly situated individuals is that her hours were cut in comparison to other part-time flex and non-traditional full-time employees. However, these actions were taken by USPS, and the only evidence Garity offers in support are work hour reports and a USPS calendar without any context or explanation as to how they show that she was treated differently than similarly situated individuals because of her disability. ECF No. 182-35. Therefore, Garity has not raised a genuine issue of material fact regarding her disparate treatment claim. I grant summary judgment for APWU on this claim.

### b. Failure to Accommodate

The prima facie case for a failure to accommodate claim is very similar to that of a disparate treatment claim. A plaintiff must demonstrate "(1) [she] is disabled within the meaning of the ADA; (2) [she] is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) [she] suffered an adverse employment action because of [her] disability." *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003). Generally, such a claim is made against an employer, who has "a duty to engage in an interactive process to consider whether" an accommodation is possible. *Id.* at 1115. In the context of a claim against a union, a plaintiff must show that the union caused or attempted to cause the employer to fail to provide a reasonable accommodation. *See* 42 U.S.C. § 2000e-2(c)(3); *Hardison v. Trans World Airlines, Inc.*, 527 F.2d 33, 42 (8th Cir. 1975) ("[A] union may be held liable if it purposefully acts or refuses to act in a manner which prevents or obstructs a reasonable accommodation by the

---

[6] APWU argues in its motion that I should consider only actions occurring before May 7, 2011, as that is the last date included in Garity's Equal Opportunity Employment Commission (EEOC) charge that forms the basis of her complaint. Because I am granting summary judgment on all claims even considering actions occurring after that date, I find it unnecessary to address this argument.

employer so as to cause the employer to discriminate."), *rev'd on other grounds*, 432 U.S. 63 (1977).

APWU argues that Garity never requested an accommodation from the national, and neither it nor the local participated in USPS's interactive accommodation process. *See* ECF No. 182-35. APWU contends it had no knowledge of any requests for accommodation, and that Garity has no evidence to show that any of its actions were motivated by her disability. Garity does not differentiate the adverse actions she considers to have been disparate treatment from those she considers to be a failure to accommodate. Therefore, I interpret this claim to rely on the withdrawal or handling of Garity's grievances, the six-day work assignment, her lack of union representation during early 2011, Taylor's handling of Garity's suspension grievance, and APWU's inaction in the face of notification by Garity as to a lack of accommodation.

Garity's failure to produce evidence showing that her disability was a motivating factor in any of these actions is fatal to her claim. As to the grievance handling, Garity points only to testimony by Poulos that NBAs James Scoggins and Ybarra gave Poulos advice on how to handle the grievances. *See, e.g.*, ECF No. 197-21 at 11 ("Did I consult them? Yes. The decisions were mine."). APWU has produced testimony from both Scoggins and Ybarra that they were unaware of Garity's medical conditions. *See* ECF Nos. 182-24 at 5 (Scoggins testifying at his deposition that he had no knowledge of Garity's restrictions or disabilities); 182-31 at 3 (Ybarra testifying no one discussed Garity's medical conditions with him and he was unaware of any attempts by Poulos to accommodate her disabilities). Garity has produced no evidence to rebut this showing or to show that Scoggins and Ybarra were motivated by her disability in advising Poulos regarding whether to withdraw grievances, or in their handling of her grievances on appeal.

Scoggins' lack of knowledge as to Garity's disability also negates any claim based on his involvement in the local's decision about six-day bids. The evidence Garity produced shows only that Scoggins worked with the local on such bids, not that he was involved in a particular decision as to Garity's work schedule. *See* ECF Nos. 182-41 at 103–04. Garity has produced no evidence

showing that Scoggins was motivated by her disability when advising the local union regarding six-day bids.

Garity also claims that she was without union representation from January through August 2011. In support, she produces documentation that Poulos and Raydell Moore, a local union member, were the local clerk shop stewards at the time, and that in May, Las Vegas local president Jerry Bevens was certified to act as her shop steward with regard to all discipline issues. ECF No. 197-81 at 2; 6–7; *see also* ECF No. 197-40 at 58 (Bevens' deposition testimony stating he was only designated to handle Garity's discipline grievances). *But see* ECF No. 182-50 at 2 (Bevens' declaration that he "effectively became Ms. Garity's designated shop steward"). Garity also points to Poulos' deposition testimony that once Bevens was appointed, Poulos understood that she was to no longer handle Garity's grievances. ECF No. 197-21 at 45–46; 66. This evidence shows there was confusion about the extent of Bevens' representation of Garity. But the fact that Bevens might not have been her designated representative for all possible grievances does not show that Garity was without representation. *See, e.g.*, ECF No. 182-50 (Bevens' understanding he was appointed because Garity did not want to be represented by anyone at the Pahrump local or had brought charges against possible representatives); ECF No. 197-21 at 43–45 (Poulos' testimony she was Garity's representative until Bevens was appointed). Garity has not produced evidence showing a lack of representation during the relevant time period, that APWU was involved in any decision to withhold representation, or that any decision regarding representation was motivated by her disability.

Next, Garity points to Taylor's attempt to address her disciplinary suspension. *See* ECF No. 197-65 at 4 (email written by Taylor detailing her experience with Garity). As part of Taylor's representation of Garity, Garity sent her an email in which she reiterated that they had discussed the fact that Garity had applied for disability retirement and was in need of accommodations from USPS. ECF No. 197-54 at 94. However, neither Taylor's email explaining her involvement with Garity nor Garity's email shows that Taylor's attempt to resolve Garity's

grievance—assuming this is an adverse action—was motivated by Garity's disability. Garity offers no other evidence to support such an inference.

Finally, Garity contends that APWU took no action even though she requested assistance in being accommodated, citing again to the 111-page exhibit containing many different kinds of documents. *See* ECF No. 197-54. While these documents show that Garity was in touch with national officials, they do not mention specific instances of a failure by USPS or the local to accommodate Garity's disabilities. In fact, most of these documents deal with Garity's myriad other grievances about her workplace. Garity has not produced any evidence showing that APWU was involved in any accommodation decision, nor has she produced any evidence showing that she asked APWU to specifically address any accommodations issues. Garity has also not produced any evidence showing that APWU's inaction was motivated by her disability.

Garity has failed to show a genuine issue of material fact regarding whether APWU caused USPS to fail to reasonably accommodate her disabilities. APWU did not do so, so I grant summary judgment for APWU on this claim.

### 3. Retaliation

"To establish a prima facie case of retaliation under the ADA, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hospitals*, 389 F.3d 840, 849 (9th Cir. 2004). "Pursuing one's rights under the ADA constitutes a protected activity." *Id.* at 850. "An adverse employment action is any action reasonably likely to deter employees from engaging in protected activity." *Id.* (internal quotation omitted). When adverse actions "closely follow complaints of discrimination, retaliatory intent may be inferred." *Id.* The standard for the "causal link is but-for causation." *T.B. ex rel Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015).

APWU argues it did not take any adverse actions against Garity, and that any adverse actions taken were not caused by her ADA-protected activity. APWU contends that NBAs are given broad discretion to resolve grievances, and Garity has not produced any evidence that any

of her grievances was settled, withdrawn, or remanded as a result of her protected activity. APWU also argues that to the extent Garity's retaliation claim is based on her National Labor Relations Board (NLRB) charge against the local union, there is no evidence APWU knew about that charge. APWU contends that to the extent the claim is based on her EEOC charges, the only responsive action from the national was to appoint Bevens as Garity's representative, which is not an adverse action. To the extent the claim is based on Garity's appeals of internal charges, APWU contends its response was to inform her of the proper procedure to bring those charges. Moreover, APWU argues that there is no evidence in the record showing that Garity's pursuit of her rights under the ADA was the but-for cause of any of its action.

Garity argues that her protected activity included three EEOC charges, three NLRB charges, appeals of internal union charges, and emails and letters to national officials. Many of the adverse actions she lists were taken by USPS or local union officials, for which APWU cannot be held liable. For example, Garity refers to reduced hours at work, her suspension, and Poulos's handling of her grievances.

As for actions attributable to APWU and its officers, Garity has failed to show either that they are adverse or that they were caused by her protected activity. Four of these allegations involve Scoggins. First, Garity refers to a telephonic statement by Scoggins to Poulos about Garity's rights at work that was apparently made within 30 days of her filing one of her EEOC charges. *See* ECF No. 197–21 at 98–99. The statement was that Garity needed to find out the purpose of a meeting with USPS management before invoking her right to union representation. *Id.* Garity has not shown that she knew about this statement until Poulos mentioned it in her deposition, and therefore she has not shown that the statement reasonably deterred her from protected activity. Nor has Garity shown that this statement was made because of her pursuit of ADA-protected rights. Second, Garity alleges Scoggins agreed to a six-day work bid for Garity even though she was on a five-day work restriction. However, as discussed above, the evidence cited by Garity shows at most that Scoggins worked with the local union and management on six-day bids and told local officials that such bids were in place in California. *See* ECF No. 197-41 at

103. This evidence does not show that Scoggins was involved with any decision to make Garity work for six days or that such a decision would have been caused by Garity's protected activity.

Third, Garity points to an email Scoggins sent to Rob Strunk (who is not identified but is presumably an APWU official) in which he details his and other NBAs' experiences with Garity. ECF No. 197-54 at 103. Again, Garity does not show that she knew about this email before this litigation, nor does she explain how, without knowing about it, this email could have deterred her from engaging in protected activity.

Fourth, Garity points to Scoggins' handling of one of her grievances from September 2010. *See* ECF No. 197-54 at 5–12. The grievance addressed many issues at the Pahrump post office, most of which did not relate to disability discrimination. The only mention of discrimination was vague and without supporting detail or factual allegations. *See id.* at 8–9 ("Retaliation Title VII An employer may not 'retaliate' against. ADA protects intimidation, threats, harassment in exercise of rights. . . . Failure to accommodate & discrimination are also occurring."). Scoggins' response was to let Garity know that APWU attempted to go through the grievance process but USPS maintained that the grievance had not been properly appealed. *Id.* at 12. He requested proof of Garity's proper appeal so that the matter could be dealt with further. *Id.* Rather than showing an adverse action by APWU, this evidence shows that Scoggins attempted to engage in the grievance process on Garity's behalf. Garity does not explain how the APWU's attempt to make sure it had the proper documentation so that it could pursue her grievance would deter her from engaging in protected activity.

Next, Garity points to APWU's motion in a separate case opposing Garity's motion to vacate an arbitration award regarding her grievance over her suspension. ECF No. 197-58. Garity has not provided any evidence that APWU's litigation strategy is causally linked to any of her EEOC, NLRB, or internal charges and communications regarding disability discrimination. Garity also argues that Taylor retaliated against her by "formulating an agreement to provide back pay of *4 hours a day because of Garity's disabilities* while she was able to work full hours within two months of the lawsuit." ECF No. 197 at 26 (emphasis in original). In an email written by

Taylor explaining how she handled Garity's grievance about her suspension, Taylor noted that Garity would not accept a resolution that did not address disability retirement, which was not possible because Garity "was not disciplined for anything concerning disability." ECF No. 197-65. Garity did not want to settle, so Taylor appealed the suspension to arbitration. *Id.* Again, rather than taking adverse action, Taylor attempted to help Garity fight her suspension, and rather than make a unilateral decision and accept a settlement, Taylor rejected the settlement and appealed USPS's actions to arbitration. That Taylor was not able to get the exact outcome Garity desired does not mean that she took adverse action against her. Furthermore, Garity has offered no evidence to show that her protected activity was the but-for cause of Taylor's actions.

Finally, Garity argues that APWU's inaction in the face of numerous communications and appeals was a form of retaliation. Even if such inaction could be considered adverse action that would reasonably deter an employee from protected activity, Garity has not produced any evidence showing that APWU purposefully took no action because of her protected activity. Any temporal proximity arises from how often Garity engaged in protected activity rather than giving rise to an inference of retaliatory intent.

Garity has failed to show a prima facie case of retaliation under the ADA against APWU. I grant summary judgment to APWU on this claim.

## II. CONCLUSION

IT IS THEREFORE ORDERED that defendant APWU National Labor Organization's motion for summary judgment **(ECF No. 182) is GRANTED.** The clerk of court shall enter judgment in favor of APWU National Labor Organization and against Rosemary Garity.

IT IS FURTHER ORDERED that plaintiff Rosemary Garity's motion to strike **(ECF No. 188) is DENIED.**

IT IS FURTHER ORDERED that APWU's motion to strike **(ECF No. 204) is DENIED as moot.**

DATED this 14th day of March, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE